# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Vivian Dorothea Grover-Tsimi,                    Civil No. 09-2852 PJS/AJB

                    Plaintiff,

                                        **REPORT AND RECOMMENDATION**
v.                                      **ON PLAINTIFF'S MOTION FOR DEFAULT**
                                        **JUDGMENT AND MOTIONS TO DISMISS**
State of Minnesota, et al.,             **BY STATE OF MINNESOTA AND CITY OF**
                                        **MINNETONKA DEFENDANTS**
                    Defendants.


   Vivian Dorothea Grover-Tsimi, 210 1ˢᵗ Ave. N.W., #302, New Prague, Minnesota 56071, pro se plaintiff;

   Anna E. Jenks, Esq., for defendant State of Minnesota;

   Stephanie A. Angolkar, Esq., for defendants City of Minnetonka, Michael Nelson, and Michael Bruckner; and

   Roger L. Rowlette, Esq., for defendants Scott County, Sarah Gorman, John Hoffer, Scott Anderson, Louis Steinhoff, and Kevin Studnicka.


   This action is before the court, Magistrate Judge Arthur J. Boylan, 334 U.S. Courthouse, 316 No. Robert St., St. Paul, MN 55101, on plaintiff's Motion for Entry of Default Final Judgment [Docket Nos. 15, 36, and 46]; defendant State of Minnesota's Motion to Dismiss [Docket No. 10]; and Motion for Dismissal and Motion to Sever Plaintiff's Claims by defendants City of Minnetonka, Michael Bruckner, and Michael Nelson (Minnetonka defendants) [Docket No. 17]. Hearing on the motions was held on June 1, 2010, at the United States Courthouse, 316 No. Robert St., St. Paul, Minnesota. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. §636(b)(1). It is the court's determination herein that plaintiff's motion for default judgment should be denied and the motions to dismiss by the State of Minnesota and the Minnetonka defendants should be granted.

## Procedural Background and Claims

Plaintiff Vivian Dorothea Grover-Tsimi has filed a complaint pursuant to 42 U.S.C. § 1983 in which she alleges causes of action arising out of an encounter she had with law enforcement officers following a third-party 911 call to her residence in Minnetonka, Minnesota, on October 18, 2003, ultimately leading to her arrest on offenses for which she was subsequently acquitted. Claims also relate to the involvement of the Scott County Sheriff's Office and certain deputies (Scott County defendants)[1] with respect to plaintiff's marital dissolution proceedings in February 2008, as well as a misdemeanor disorderly conduct prosecution for which the plaintiff was found guilty in 2008.

The complaint[2] was filed in federal court on October 14, 2009, along with an

---

[1] The Scott County defendant are: Scott County, John Grover, Sarah Gorman, John Hoffer, Scott Anderson, Louis Steinhoff, and Kevin Studnicka. Counsel for the Scott County defendants served and filed a joint answer to the complaint on behalf of the county and all of the individual defendants. However, at hearing the court was advised that defendant John Grover had not been personally served and had not authorized counsel or the county to accept service on his behalf, and the answer with respect to Mr. Grover was therefore premature. To date, the complaint has not been served on John Grover [Docket No. 51].

[2] [Docket No. 1]. Generally described, the 20 separate counts alleged in the complaint are: (1) unreasonable seizure, arrest without probable cause in violation of the Fourth Amendment; (2) excessive force; (3) obstruction of justice in violation of the Fifth Amendment; (4) deprivation of rights under color of law; (5) conspiracy against rights in violation of the Fourth and Fifth Amendments; (6) failure to supervise officers with violent propensities against the City of Minnetonka; (7) failure to supervise deputies with violent propensities/foiled demeanors against Scott County; (8) violation of Americans with Disabilities Act of 1990 against Scott County; (9) double jeopardy against the State of Minnesota; (10) deprivation of right to and appointment of counsel against the State of Minnesota; (11) tampering with a witness in violation of the Sixth Amendment against the State of Minnesota; (12) cruel and unusual punishment in violation of the Eighth Amendment against the State of Minnesota; (13) battery; (14) assault; (15) false arrest/false imprisonment; (16) malicious prosecution; (17) intentional/negligent infliction of emotional distress; (18) negligent supervision; (19) vicarious liability; and (20) punitive damages.

application to proceed *in forma pauperis* (IFP).[3] The IFP application was granted and issuance of summons was authorized by Order dated October 23, 2009.[4] Summons were issued as to each defendant on November 4, 2009, for service by the United States Marshals Service. Service of process returns were filed on January 5, 2010,[5] indicating that the State of Minnesota was personally served on December 28, 2009, and all other defendants, save John Grover, were personally served on December 29, 2009. An answer was served and filed on behalf of the Minnetonka defendants on January 12, 2010;[6] the State of Minnesota served and filed a motion to dismiss on January 15, 2010;[7] and a joint and separate answer on behalf of the Scott County defendants was filed on January 19, 2010, and served on January 20, 2010. The Minnetonka defendants served and filed a motion to dismiss on February 10, 2010.[8] Meanwhile, plaintiff Vivian Grover-Tsimi filed an Affidavit and Request for Default and Default Judgment[9] on January 21, 2010, but no proof of service was provided. Plaintiff filed a re-served Motion for Entry of Default Final Judgment on March 29, 2010.[10] The case is presently before the court on plaintiff's motion for default judgment as to all defendants and on motions to dismiss by the State of Minnesota and the Minnetonka defendants. The Scott County defendants appeared at

---

[3] [Docket No. 2].

[4] [Docket No. 3].

[5] [Docket No. 5].

[6] [Docket No. 6].

[7] [Docket Nos. 10 and 13].

[8] [Docket Nos. 17 and 22].

[9] [Docket No. 15].

[10] [Docket No. 46].

hearing in opposition to the default motion, but do not presently have a motion before the court.

**Default Judgment**

Plaintiff moves pursuant to Fed. R. Civ. P. 55(b)(2) for default judgment against all defendants. The initial request for default and default judgment dated January 21, 2010, alleged that the defendant, State of Minnesota, et al., had failed to appear or otherwise defend the action, despite unrebutted evidence in the record that all served defendants had either answered or moved to dismiss by that date. In her subsequent motions for default the plaintiff asserts that she had not been collectively served an answer by the defendants within 21 days of service of the complaint and default judgment was therefore warranted. She further insists that the Scott County Attorney could not properly refuse to accept service on behalf of a former employee, John Grover, and that she is therefore entitled to judgment for the relief requested.[11] At hearing, in response to defense contentions that plaintiff's motion failed to clearly indicate the particular defendant(s) being referenced in her motion pleadings, plaintiff emphatically argued that all defendants were essentially Minnesota defendants, and she had sued the State of Minnesota **collectively**.[12] Therefore, the state's failure to serve a timely answer entitled her to default judgment with respect to all defendants, without distinction between the state and city and

---

[11] Plaintiff's motion contains accusatory discussion relating to actions by the U.S. Marshals Service with regard to service of process in this matter. The court record indicates that the Marshals Service performed its process serving duties in a timely fashion and in the manner prescribed under the Federal Rules of Civil Procedure. Any assertion of wrongdoing by any person in the Marshals Service in this matter is not supported by any evidence in the record and appears to be wholly unfounded. Indeed, successful personal service was timely accomplished with respect to 10 of 11 defendants; the Marshals Service has properly reported two unsuccessful attempts to personally serve defendant John Grover [Docket Nos. 5 and 51]; and plaintiff is incorrect in her contention that Scott County is required to accept service on behalf of a former employee who is sued in an individual capacity.

[12] Complaint, caption.

county entities or employees.

Rule 55 provides that default judgment may be obtained "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a) (emphasis added). Plaintiff in this instance is seeking default judgment against distinctly separate parties who have responded to the summons and complaint either by answer or by motion to dismiss. The Rule contains no provision for collective service, collective judgment, or joint and several default based upon the failure to respond to the complaint by fewer than all defendants, and the court finds no authority to support the position that such a default judgment may be obtained under any circumstances. Consequently, plaintiff's effort to obtain default judgment rests upon her right to default with respect to each defendant separately considered.

**State of Minnesota.** The summons and complaint in this action was effectively served upon the State of Minnesota on December 28, 2009. The summons provided that either an answer to the complaint or a motion under Rule 12 must be served within 20 days thereafter, and Rule 12(a)(1) of the Federal Rules of Civil Procedure has been amended to allow 21 days[13] for service of a pleading responding to a summons and complaint. The State of Minnesota served and filed a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure on January 15, 2010, and a certificate of service by mail was filed on that date. The record establishes that service was accomplished well within the 21-day period and plaintiff has made no evidentiary showing to rebut the contention that the motion to dismiss was properly served in a timely fashion. Plaintiff's motion for entry of default judgment against the State of Minnesota

---

[13]  Advisory Committee Note to Rule 12, 2009 Amendments.

is without merit and should be denied.

**Minnetonka Defendants.**  Summons and complaints were effectively served on defendants City of Minnetonka, Michael Nelson, and Michael Bruckner on December 29, 2009. A joint and several answer was filed and served by mail on behalf of these defendants on January 12, 2010.  Again, the record establishes that service was accomplished well within the 21-day period allowed under Rule 12(a)(1) of the Federal Rules of Civil Procedure, and plaintiff has made no evidentiary showing to rebut the contention that the motion to dismiss was properly served in a timely fashion.  Plaintiff's motion for entry of default judgment against the Minnetonka defendants is wholly without merit and should be denied.

**Scott County Defendants.**  The summons and complaints were served on defendants Scott County, Sarah Gorman, John Hoffer, Scott Anderson, Louis Steinhoff, and Kevin Studnicka on December 29, 2009.  As previously noted, the U.S. Marshals Service did not make effective service on defendant John Grover by delivery to the Scott County Attorney at the address provided by the plaintiff.[14]  A second attempt at service on John Grover by delivery to the Minnesota Attorney General was likewise unsuccessful.[15]  A joint and separate answer was filed on behalf of Scott County defendants on January 19, 2010, and the answer was served by mail on January 20, 2010.  Plaintiff contends that the 21-day service rule must be strictly applied; service of the answer by the responding Scott County defendants was late by a day; and therefore, she is entitled to entry of default judgment.  Moreover, plaintiff insists that service on John Grover was effective, and that she is jointly and severally entitled to default judgment

---

[14] [Docket No. 5].

[15] [Docket No. 51].

against all defendants.

Notwithstanding the submission of an unauthorized answer on behalf of defendant John Grover, the record in this matter indicates that personal service on Mr. Grover was attempted on two occasions and both times service was unsuccessful. The complaint states that Grover is sued in an individual capacity, subjecting him to personal liability. Plaintiff offers no authority under which a former employer can accept service on behalf of the individual defendant without authorization under these circumstances. In addition, any effort by the plaintiff to assess blame against the U.S. Marshals Service is misguided. Personal service of process was successful with respect to all defendants except John Grover,[16] and it is the plaintiff who has failed to provide a valid address for service on Mr. Grover.

As to the timeliness of service of the answer by all other Scott County defendants, those parties acknowledge that the answer was served one day late, but argue that the motion for entry of default judgment should be denied because the technical default was the result of an inadvertent failure to place the pleading in the mailbox in a timely fashion.[17] Defendants contend that their active participation in this case, as well as the timely electronic filing of the pleading in the court docket on January 19, 2010, establishes that the one-day delay in serving the pleading was indeed unintended. Furthermore, defendants assert that the plaintiff has not shown any prejudice resulting from the minimal delay in receiving the Scott County defendants' joint and separate answer. The defendants' position is well taken. Plaintiff relies entirely upon a

---

[16] The magistrate judge is recommending herein that the Scott County defendants be required to file and serve an amended complaint to accurately allege whether or not the joint and separate answer is made on behalf of John Grover.

[17] Affidavit of Roger L. Rowlette [Docket No. 54] and Affidavit of Pattie Jo Diamond [Docket No. 55].

strict application of Rule 55 and the 21-day service provision of Rule 12.  However, Rule 55(c) provides that entry of default may be set aside for good cause and for reasons stated at Rule 60(b).  Rule 60(b) states that the court may relieve a party from a final judgment for reasons of mistake, inadvertence, surprise, or excusable neglect.  <u>United States v. Harre</u>, 983 F.2d 128, 130 (8th Cir. 1993).  Also, default judgment based upon a marginal failure to comply with time requirements is distinguished  from sanctions for "willful violations of court rules, contumacious conduct, or intentional delays."  <u>Harre</u> at 130.  A decision on motion for entry of default judgment lies within the sound discretion of the court and default judgments are not favored under the law.  <u>Id.</u>  In light of the *de minimus* delay in serving the answer in this instance, the lack of evidence of intent by defendants to delay or otherwise gain advantage from the late service, and the complete absence of any prejudice to the plaintiff arising out of the minimal one-day delay, the court concludes that entry of default judgment against the Scott County defendants is unwarranted in this instance.  Plaintiff's motion for default should be denied.

**<u>State of Minnesota's Motion to Dismiss</u>**

**Eleventh Amendment.**  Defendant Minnesota moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject-matter jurisdiction.  The state contends that the suit is barred under the Eleventh Amendment because it has not consented to a suit of this nature.  Alternatively, the state asserts that the complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action for which relief can be granted.  It is the court's determination that this case is barred under the Eleventh Amendment and the matter should therefore be dismissed for lack of subject matter jurisdiction.

The Eleventh Amendment prohibits suit against the State.  With regard to such immunity the Supreme Court has said:

> "That a State may not be sued without its consent is a fundamental
> rule of jurisprudence having so important a bearing upon the
> construction of the Constitution of the United States that it has
> become established by repeated decisions of this court that *the
> entire judicial power granted by the Constitution does not embrace
> authority to entertain a suit brought by private parties against a
> State without consent given*: not one brought by citizens of another
> State, or by citizens or subjects of a foreign State, because of the
> Eleventh Amendment; and not even one brought by its own
> citizens, because of the fundamental rule of which the Amendment
> is but an exemplification."

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900 (1984) (quoting

Ex parte State of New York No. 1, 256 U.S. 490, 497, 41 S.Ct. 588, 589 (1921)).  Sovereign

immunity may be waived by the State or abrogated by Congress, but such consent or abrogation

must be unequivocally expressed.  Pennhurst at 99.  A waiver of immunity by the state is found

"only where stated 'by the most express language or by such overwhelming implications from

the text as [will] leave no room for any other reasonable construction.'" DeGidio v. Perpich, 612

F.Supp. 1383, 1389 (1985)(citations omitted).  The State of Minnesota asserts that it has not

waived Eleventh Amendment immunity with respect to claims in the case and plaintiff offers no

argument or authority to the contrary.  Furthermore, the court finds no basis upon which to

conclude that Congress has abrogated the state's sovereign immunity with respect to claims

under 42 U.S.C. § 1983 or otherwise.  See Moore v. Plock, et al., 2010 WL 2179520 (8th Cir.,

June 2, 2010)(unpublished opinion).  The court lacks subject matter jurisdiction in this matter as

a result of the State of Minnesota's Eleventh Amendment immunity, and the state's motion to

dismiss should therefore be granted.

**Minnetonka Defendants' Motion to Dismiss**

      **Standard of Review.**  A complaint that is being challenged on motion to dismiss

pursuant to Fed. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to

survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. Twombly, 127 S.Ct. at 1974. When reviewing a motion to dismiss, the claim must be liberally construed, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 127 S.Ct. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965. However, a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

When matters outside the pleadings are presented with a Rule 12(b)(6) motion, and those matters are not excluded by the court, the motion should be treated as a Fed. R. Civ. P. 56 motion for summary judgment. However, on a motion to dismiss for failure to state a claim, the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. Piper Jaffray v. Nat'l Union Fire Insur. Co., 967 F.Supp. 1148, 1152 (D. Minn. 1997) (citing Vizenor v. Babbitt, 927 F.Supp. 1193, 1198 (D. Minn. 1996)). See also Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997). Materials which are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference. Piper Jaffray, 967 F. Supp at 1152. In addition, materials which are public record may be considered in deciding a motion to dismiss.

10

E.E.O.C. v. Am. Home Prod., Corp., 199 F.R.D. 620, 627 (N.D. Iowa 2001) (citing Missouri ex

rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).  On the other hand,

"written or oral evidence in support of or in opposition to the pleading that provides some

substantiation for and does not merely reiterate what is said in the pleading," may be construed

as "matters outside the pleadings," requiring treatment of the motion as one for summary

judgment.  Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 948 (8th Cir. 1999).

        In support of their motion to dismiss, the Minnetonka defendants have submitted

an Affidavit of Officer Michael Nelson in which the affiant offers certain recollections regarding

the October 18, 2003, incident which gave rise to claims in this case.  The affidavit contains fact

assertions which are outside the scope of the pleadings in this matter and which the court

declines to consider in its decision on the Rule 12(b)(6) motion to dismiss.  However, the

Minnetonka defendants also offer the Affidavit of Stephanie A. Angolkar for purpose of

introducing a three-charge criminal complaint based upon the October 18, 2003, incident; the

police incident report relating to the same incident; and an amended complaint with notice of an

additional tab charge of obstructing legal process.[18]  The court finds that the criminal complaints

(Ex. A. and Ex. C) are matters of public record which are properly considered on motion to

dismiss without converting the motion into one for summary judgment.  The court does not agree

with defendants' contention that the incident report (Ex. B) is necessarily embraced in the

pleadings and the report is therefore not considered in this motion.  In any event, the exhibits that

are being considered by the court do not state facts that are material to the court's decision as to

---

        [18] [Docket No. 21].  Exhibits to Affidavit of Stephanie A. Angolkar.  The initial criminal
complaint charged Vivian Grover-Tsimi with misdemeanor offenses of domestic assault/causing
fear, domestic assault/causing harm, and disorderly conduct (Ex. A).  The amended complaint
added a misdemeanor charge of obstructing legal process (Ex. C).

whether the complaint alleges facts sufficient to survive a motion to dismiss for failure to state a claim, but rather, those materials merely provide a general account of the events of October 18, 2003, which is helpful in appreciating the source of allegations in this case and are also provided to a large extent in the complaint itself as quoted below. Furthermore, plaintiff asserts no objection to the court's consideration of the materials for purposes of the Rule 12 motion to dismiss, and indeed, other than the self-evident proposition that she has suffered a wrong at the hands of the defendants, plaintiff's sole opposition to the motion to dismiss is her insistence that she entitled to default judgment.

**Failure to State a Claim.** Plaintiff Grover-Tsimi's 19-page complaint introduces her claims against all defendants, including the City of Minnetonka and officers Michael Nelson and Michael Bruckner, by alleging that:

> Plaintiff's unlawful arrests without probable cause, use of excessive force against Plaintiff, obstructing the administration of justice, the intent to influence the verdict and/or hinder the due course of justice and the Defendants knowledge of the wrongs conspired to be done having power to prevent or the capacity to aid in preventing the commission of the same and willfully neglecting or refusing to prevent, and Plaintiff being put twice in jeopardy of life or limb. Plaintiff also asserts state tort claims against Defendants for battery, false arrest, false imprisonment, malicious prosecution, and intentional/negligent infliction of emotional distress. Plaintiff also commences this action against the City of Minnetonka and County of Scott for maintaining a policy and practice of inadequately training, supervising and disciplining its police officers and deputies.[19]

With respect to the Minnetonka defendants specifically, Ms. Grover Tsimi alleges:

> The Defendants of the Minnetonka Police Department Michael Nelson and Michael Bruckner entered the life of Plaintiff on October 18, 2003 based on an obscure 911 call placed by a third

---

[19] Complaint, page 1.

party claiming "a woman was being killed", an unsubstantiated domestic disturbance, at Plaintiff's residence located at [address redacted], Minnetonka, Minnesota.  What did the Defendant on this day really want?  Who did they want?  Apparently they wanted a deportable, non-citizen, an African; Plaintiff's spouse; a spouse who had domestically abused Plaintiff prior to 2003 that prompted a few 911 calls.  But the circumstance got out of hand; with the presence of the Plaintiff's spouse in the home undetected.  Plaintiff would be "man handled" in her home, victimized and taunted with derogatory comments, sexual harassment and ultimately physical assault; when Plaintiff refused to succumb to the harassing behavior, she became a criminal and home-based interrogation with her freedom restricted to the bedroom of the home was intimidating.  Vulnerable, Plaintiff apparently did not utter the words the Defendants wanted to hear, thus, in the efforts to glaze the uninhibited misconduct of their actions; and the apparent "false alarm" Defendants Michael Nelson and Michael Bruckner of the Minnetonka Police Department falsely arrested Plaintiff and illegally detained her without lawful reason or probable cause depriving Plaintiff of her civil rights; eventually appearing, her spouse stood in silence; a mess, yet a shock.  Defendants had arrested an innocent Plaintiff with her life and liberty hanging in the balance of criminal charges.  For what could the Defendants charge Plaintiff?  Domestic Assault/Causing Fear, Domestic Assault/Causing Harm, Disorderly Conduct (under 609.72 Subd. 1(3)), and Obstruction of Justice.  Plaintiff was put to trial and acquitted by judge and jury.  The acquittal apparently "shook the house" of the Minnetonka Police Department.  However, Plaintiff was left traumatized, emotionally wounded; medically diagnosed with acute anxiety, a panic disorder; posttraumatic stress disorder commonly known by acronym PTSD.  Under psychological evaluation for several years to come, Plaintiff attempted the healing process in coping with the vulnerability of the aftermath; yet a constant state of anxiety, feeling unprotected, not safe.  Plaintiff upon acquittal becomes the State's target, in a sense, because the threat of this complaint could arise at any time.[20]

In addition to this "fact" setting, plaintiff Grover-Tsimi further alleges with respect to the

Minnetonka defendants:

---

[20]  Complaint, pp. 2-3.

Defendant Michael Nelson, at all times relevant hereto, was a Minnetonka Police Officer acting out within the scope of his employment. Defendant Nelson is sued individually and in his official capacity as a Minnetonka Police Officer. Defendant Michael Bruckner, at all times relevant hereto, was a Minnetonka Police Officer acting out within the course and scope of his employment. Defendant Bruckner is sued individually and in his official capacity as a Minnetonka Police Officer. Defendant City of Minnetonka is the employer of Defendants Nelson and Bruckner and is responsible for their supervision, training and discipline.[21]

In a portion of the complaint labeled "<u>CHARACTER,</u>" plaintiff states:

Defendants of the Minnetonka Police Department had apparently shown violent propensities prior to October 18, 2003.[22]

and

Plaintiff has been made-out to be a criminal in the wake of highly vulnerable illnesses, one of which mentally has been conceived through Plaintiff's direct acquaintance with Defendants of the Minnetonka Police Department.[23]

Matters asserted in the portion of the complaint headed "FACTUAL BACKGROUND" which

relate direct to the Minnetonka defendants, are as follows:

3.      Plaintiff was sexually harassed and assaulted in her home on October 18, 2003 and unlawfully detained by defendants Michael Nelson and Michael Bruckner.

4.      Plaintiff was put through a trial and <u>found not guilty</u> of all criminal charges imposed by the State of Minnesota in 2003.

5.      Plaintiff was <u>found not guilty</u> of Disorderly Conduct 609.72 Subd.1 (3) imposed by the State of Minnesota in 2003.

_____

[21] Id., page 4.

[22] Id., page 5.

[23] Id.. page 6.

> 6. Plaintiff has suffered an acute posttraumatic stress disorder onset by trauma inflicted by Defendants of the Minnetonka Police Department in 2003 and subsequently the stress of trial in 2004.[24]

The statement of claims contained in plaintiff's complaint consists of 20 separate Counts which are further divided into categories labeled Counts I-V, Federal Claims Against Individual Defendants; Count VI, Federal Claim Against the City of Minnetonka; Counts VII-VIII, Federal Claims Against the County of Scott; Counts IX-XII, Federal Claims Against the State of Minnesota; Counts XIII-XVIII, State Claims Against Individual Defendants; Count XIX, State Claims Against Defendant City of Minnetonka and Defendant County of Scott; and Count XX, Punitive Damages. In recitations contained in the separate counts concerning the events of October 2003 relating to the City of Minnetonka defendants, and the events of 2008 relating to Scott County defendants, the asserted causes of action are frequently referenced without delineating between the events and/or the defendants. As to counts containing claims/allegations relating specifically to the Minnetonka defendants, the plaintiff alleges in pertinent counts:

> **Count I, Unreasonable Seizure, Arrest Without Probable Cause**: Defendants lacked probable cause to detain and arrest Plaintiff when she was seized and arrested in 2003 . . . and thereby deprived her of her Fourth Amendment rights to the United States Constitution" and "[t]he arrest and detention of Plaintiff by Defendants was objectively unreasonable in 2003 . . . and the unlawfulness of such act was apparent in light of the clearly established law contrary to 42 U.S.C. § 1983 resulting in Plaintiff's injuries and incurred damages set forth.
>
> **Count II, Excessive Force**: Defendants used unreasonable force in light of the existing circumstances; Plaintiff posed no threat to any of the Defendants of 2003 . . . and was improperly held onto and restrained, . . . thereby depriving the Plaintiff of her Fourth Amendment rights to the United States Constitution to be free

---

[24] Complaint, pp. 6-7.

from unreasonable seizure.

**Count IV, Deprivation of Rights Under Color of Law**:
Defendant Michael Nelson and Defendant Michael Bruckner acted
under color of the law of the State of Minnesota and pursuant to
their authority as police officers of the City of Minnetonka
willfully subjected Plaintiff to the deprivation of her rights as
protected by the Constitution or laws of the United States, in part,
capitalizing on Plaintiff's vulnerability verbally extending
derogatory attention to Plaintiff's physical attributes as an African-
American woman.

**Count VI, Failure to Supervise Officers with Violent
Propensities**: Apparently Defendants of the Minnetonka Police
Department have shown violent propensities prior to October 18,
2003 of which Defendant City of Minnetonka knew or should have
known.  Defendant City of Minnetonka failed to properly
supervise, train, and discipline Defendants of the Minnetonka
Police Department in a manner amounting to negligent
indifference to the constitutional rights of Plaintiff.  The failure to
adequately supervise and discipline Defendants of the Minnetonka
Police Department with known violent propensities by Defendant
City of Minnetonka explicitly authorized and encouraged
Defendants of the Minnetonka Police Department to forcibly seize,
detain, and injure Plaintiff depriving her of her Fourth Amendment
rights to the United States Constitution to be free from
unreasonable seizure contrary to 42 U.S.C. § 1983.  Defendant
City of Minnetonka's failure to adequately supervise, train and
discipline Defendants of the Minnetonka Police Department has
resulted in Plaintiff's injuries and incurred damages set forth.

**Count XIII, Battery**: When Defendants Restrained Plaintiff they
intentionally and without permission had offensive contact with
Plaintiff, such constituting battery.  Defendants either actively
participated in the unlawful restraining of Plaintiff or failed to take
action to stop others from injuring her.

**Count XIV, Assault**: When Defendants intentionally restrained
and arrested Plaintiff, Defendants created the reasonable
apprehension of an immediate battery and thereby committed
assault.

**Count XV, False Arrest/False Imprisonment**: Defendants
caused criminal proceedings against Plaintiff and either actively
participated in or failed to take action to stop Defendants from

falsely arresting Plaintiff and subjecting her to false imprisonment.

**Count XVI, Malicious Prosecution**: Defendants caused criminal proceedings against Plaintiff and such criminal proceedings were instituted without probable cause and with malice as, upon information and belief, said Defendants acted out of desire to cover up their illegal actions, or for other improper reasons, rather than because of a lawful motive. Plaintiff was subjected to criminal proceedings that were terminated in favor of Plaintiff in 2003 to include the charge of Disorderly Conduct 609.72 Subd. 1(3).

**Count XVII, Intentional/Negligent Infliction of Emotional Distress**: The conduct of Defendants was extreme and outrageous. Defendants intentionally or recklessly engaged in such extreme and outrageous conduct in their positions of power that demonstrated a negligent pattern of conduct, not just an isolated example.

**Count XVIII, Negligent Supervision**: Defendants of the Minnetonka Police Department apparently demonstrated violent propensities of which Defendant City of Minnetonka knew or should have known.

**Count XIX, Vicarious Liability**: Defendant[] City of Minnetonka, . . . as employer[], [is] liable for the state law torts of its employees; Defendants Michael Nelson, Michael Bruckner, . . . who are described in this Complaint. As a result of these torts, perpetrated by employees of the City of Minnetonka . . . acting within the course and scope of their duties took a complete detour in carrying out their duties, . . .

**Count XX, Punitive Damages**: All of the afore noted acts, errors and omissions of all Defendants were committed in bad faith and with reckless disregard for the rights and safety or Plaintiff so as to subject all Defendants, and each of them, to punitive damages pursuant to the statutes and common law of the United States of America.

As it pertains to the Minnetonka defendants, the complaint in this matter consists exclusively of conclusory statements and has no meaningful factual content. Despite the explicit instruction of Federal Rule of Civil Procedure 8(a)(2), whereby a pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" Ashcroft v. Iqbal,

129 S.Ct. 1937, 1949 (quoting Rule 8(a)(2)), the rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955).   To survive dismissal, a complaint must state sufficient facts to state a claim that is plausible on its face.  Id. (citing Twombly, 550 U.S. at 570).  The standard requires more that mere possibility that a defendant has acted unlawfully.  Id.  Although fact allegations in the complaint must be taken as true, the court is not required to accept the truthfulness of legal conclusions or "a legal conclusion couched as a factual allegation."  Id. at 1950.

Over and again the complaint merely recites legal conclusions which are unsupported by concrete facts sufficient to state a plausible claim.  As to the minimal factual background that is provided (supra 13), many of those "facts" are not directly asserted, but rather, are stated in the form of rhetorical questions and speculations designed to infer a legal conclusion.  Whatever information there is that may be construed as facts relating to claims in this case, those tidbits merely support the undisputed and unremarkable contentions that the plaintiff did indeed have some interaction with Minnetonka Police officers on October 18, 2003, and that she was arrested, tried, and acquitted on charges arising out of the events of that day.  The complaint contains essentially no facts whatsoever to support the actual legal conclusions or establish some basis for the elements of the various causes of action that are alleged.  Specifically, there are no facts to support a conclusion that the plaintiff was arrested without probable cause; there are no facts on which to plausibly conclude that the plaintiff had been subjected to excessive force by Minnetonka police officers; and no facts to establish that the officers otherwise acted under color of law in a manner that deprived the plaintiff of her constitutional rights.  As to claims that the City of Minnetonka failure to properly supervise,

train, and discipline its officers, there are no facts on which to base the underlying claim that the officers acted in an unlawful manner, there is no evidence to support the repeated bare assertion that "Defendants of the Minnetonka Police Department apparently demonstrated violent propensities of which Defendant City of Minnetonka knew or should have known," and there are no facts relating to training and discipline of officers. Finally, there are no facts in the complaint to satisfy elements of the state tort claims of battery, assault, false imprisonment, false arrest, malicious prosecution, and negligent or intentional infliction of emotional distress, whether construed as either direct liability or vicarious liability claims. The only inference that the court is inclined to make from the complaint in this case is that the plaintiff is operating under the belief that her acquittal on criminal charges arising out of the October 18, 2003, incident is a sufficient factual basis to establish plausibility or otherwise support her claims. Such assumption is mistaken. The complaint in this matter fails to state a cause of action upon which relief can be granted against the City of Minnetonka and Officers Michael Nelson and Michael Bruckner, and those defendants' motion to dismiss pursuant to Rule 12(b)(6) should therefore be granted.

**Alternative Grounds for Dismissal**

**Statute of Limitations.** The Minnetonka defendants contend that the state intentional tort claims that are alleged in the complaint are barred by Minnesota's two-year statute of limitations under Minn. Stat. § 541.07(1). The statute provides:

> . . . the following actions shall be commenced within two years:
>
> (1) for . . ., assault, battery, false imprisonment, or other tort resulting in personal injury, . . .

The statute of limitations for intentional torts under Minnesota law is two years. Leaon v. Washington County, 397 N.W.2d 867, 870 (Minn. 1986).

The complaint alleges state tort claims of battery, assault, false imprisonment, false arrest, malicious prosecution, and negligent or intentional infliction of emotional distress. The alleged causes of action relate to the events of October 18, 2003. This lawsuit was filed on October 14, 2009, and was served on the individual defendants on December 28, 2009. Under any reasonably considered time frame, this action was commenced long after expiration of the two-year limitations period for intentional torts, including battery, assault, false imprisonment, false arrest, malicious prosecution, and intentional infliction of emotional distress. In addition, the complaint claim for negligent infliction of emotional distress was served after expiration of the applicable six-year statute of limitations for personal injury actions under Minn. Stat. § 541.05(5), and is arguably barred as well. In any event, plaintiff has not alleged facts sufficient to proceed on a claim for negligent infliction of emotional distress.

**Qualified Immunity.** As to § 1983 claims against Officer Nelson and Officer Bruckner in their individual capacities, those defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred. The Supreme Court has long held that a government officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages. Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those

who knowingly violate the law." Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (D.Neb. 2004)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct 534, 537 (1991)). Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court long before trial, though the plaintiff is given the benefit of all relevant inferences on summary judgment, and a party is not entitled to summary judgment on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue. Wiegand v. Spadt, 317 F.Supp.2d at 1137 (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)). "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions. Wiegand at 1137 n.3 (citing Pace, 201 F.3d at 1056).

Defendants in this matter assert that as a matter of law there was no violation of plaintiff's constitutional rights with respect to excessive force and unreasonable seizure claims, and that they are therefore entitled to qualified immunity protections from liability for individual damages. A primary purpose of the qualified immunity defense is to protect government officials from the burdens of trial and discovery. Lovelace v. Delo, 47 F.3d 286, 287 (1995). Even though some predicate facts have been alleged in this matter, qualified immunity is typically considered on motion for summary judgment and generally involves consideration of facts elicited though at least some additional discovery. See Ashcroft v. Iqbal, 129 S.Ct. at 1953. Consequently, the court declines to recommend dismissal of individual defendants on qualified immunity grounds on a Rule 12 motion, though such determination by the court does not entitle plaintiff to conduct discovery in light of her factually deficient complaint. Id. at 1954.

Based upon the file and records in this action, along with the motions, memorandums, and exhibits that are before the Court, the Magistrate Judge makes the following:

# RECOMMENDATION

It is **hereby recommended** that:

1.  Plaintiff Vivian Dorothea Grover-Tsimi's Request for Default Judgment [Docket No. 15], plaintiff's Motion for Entry of Default Final Judgment [Docket No. 36], and plaintiff's re-served Motion for Entry of Default Final Judgment [Docket No. 46] be **denied**;

2.  Defendant State of Minnesota's Motion to Dismiss [Docket No. 10] be **granted**; and

3.  Motion for Dismissal and Motion to Sever Plaintiff's Claims against the City of Minnetonka, Michael Bruckner, and Michael Nelson be **granted in part and denied as moot in part** [Docket No. 17].  The Minnetonka defendants' motion to dismiss should be **granted** and their motion to sever should be **denied as moot**;

4.  Ramsey County defendants shall file an amended answer to appropriately reflect the status of representation and waiver or non waiver of personal service of process by defendant John Grover.


Dated:     June 17, 2010


  s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before July 1, 2010.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.